UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ACCESS 4 ALL, INC., and    :
FELIX ESPOSITO,          :
                      :    HONORABLE JOSEPH E. IRENAS
        Plaintiffs,   :
                      :    CIVIL ACTION NO. 04-6060 (JEI)
    v.               :
                      :    **OPINION**
ABSECON HOSPITALITY     :
CORPORATION,          :
                      :
        Defendant.    :

**APPEARANCES:**

LAW OFFICES OF ALAN R. ACKERMAN
By:  Alan R. Ackerman
1719 Route 10 East
Parsippany, NJ  07054
    Counsel for Plaintiffs


FOX ROTHSCHILD LLP
By:  Joseph G. Antinori
Midtown Building
1301 Atlantic Avenue
Atlantic City, NJ  08401
    Counsel for Defendant


**IRENAS**, Senior District Judge:

Plaintiffs commenced this action on December, 6, 2004, alleging that while visiting Hampton Inn, Defendant's property located in Absecon, New Jersey (the "Hampton Inn"), Plaintiff Esposito encountered architectural barriers, and such barriers violated Title III of the Americans with Disabilities Act (the

"ADA").[1]  Plaintiffs seek (1) declaratory judgment declaring that Defendant's property is in violation of Title III of the ADA; (2) injunctive relief requiring that Defendant making all readily achievable alterations to the Hampton Inn, to the extent required by the ADA; and (3) attorney's fees, costs, and litigation expenses.  Subject matter jurisdiction in this case is based on 28 U.S.C. § 1331.

Pending before the Court are Plaintiffs' Motion for Summary Judgment, Defendant's Motion for Summary Judgment, Defendant's Cross Motion for Summary Judgment, and Defendant's Motion to Bar or Strike the Testimony of Plaintiffs' Expert.  For the reasons stated below, Defendant's Motion and Cross Motion for Summary Judgment will be denied, and Plaintiffs' Motion for Summary Judgment will be denied.

## I.

Plaintiffs, Access 4 All, Inc. ("A4A") and Felix Esposito, commenced this action on December 6, 2004 against Defendant, Absecon Hospitality Corporation ("AHC"), alleging a violation of

---

[1]  Title III of the ADA provides, in pertinent part, that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation..."  42 U.S.C. § 12182(a). Discrimination includes "a failure to remove architectural barriers ... that are structural in nature, in existing facilities..."  42 U.S.C. § 12182(b)(2)(A)(iv).

Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, et seq. (the "ADA").

Plaintiff A4A is a not-for-profit Florida corporation whose members consist of individuals with disabilities. A4A's stated purpose is to represent the interests of its members by ensuring that places of public accommodations are accessible to disabled persons. (Compl. ¶ 8). Plaintiff Esposito is a Florida resident who resides in Margate, Florida. (Compl. ¶ 2). Mr. Esposito was one of the founding members of A4A, which was formed approximately four to five years ago. Mr. Esposito served as A4A's first treasurer. (Esposito Dep., Def. Ex. 2 at 150:10-22). Defendant AHC owns and operates a Hampton Inn hotel located in Absecon, New Jersey (the "Hampton Inn").

Mr. Esposito currently resides in Florida. He has one sister and three brothers, none of whom live in New Jersey. Mr. Esposito's father is deceased and his mother currently resides in Long Island, New York. (Esposito Dep. at pp. 16-22). None of Mr. Esposito's family members lives in New Jersey except an uncle, whom Mr. Esposito has not seen for 30 or 40 years and has no knowledge of where in New Jersey the uncle resides. (*Id.* at 20:19-21:2, 21:3-7).

Mr. Esposito claims that two of his former girlfriends, Elizabeth Manley and Joan Rodriguez, reside in New Jersey. (Esposito Dep. at 173:7-9). Ms. Manley is a casino waitress that

3

Mr. Esposito met during a visit in 2004 to one of the Atlantic City casinos.  He does not know where Manley resides nor does he have her phone number.  (*Id*. at 173:10-174:9).  He testified that if he wanted to get into contact with her, he would have to go back to the casino where she works.  (*Id.*).  However, Mr. Esposito forgot the name of the casino in which Ms. Manley was employed.  (*Id.*).

Mr. Esposito testified that he knew Ms. Rodriguez from Florida, before she moved to New Jersey approximately two years ago.  He does not have Ms. Rodriguez's telephone number, does not know where Ms. Rodriguez resides, and has not spoken to her in two years.  (Esposito Dep. at 176:9-20).

In 2004, Mr. Esposito visited Atlantic City with Richard Wyrsch.  (Esposito Dep. at 81:22-82:5).  At that time, Mr. Wyrsch was an employee of Access-Ability Inc, the entity that has provided an expert report for Plaintiffs in this case.  Mr. Esposito testified that he stayed in five different hotels in connection with the Atlantic City trip.  (*Id.* at 85:20-86:17).  Mr. Esposito subsequently filed ADA lawsuits against all of the hotels in which he stayed.[2]  (*Id.* at 97:3-6).

Mr. Esposito and Mr. Wyrsch stayed at the Hampton Inn on the night of August 31, 2004.  Upon arrival at the Hampton Inn at

---

[2] Mr. Esposito has filed approximately 100 ADA lawsuits. (Def. Br. at p. 4).

approximately 9:00 p.m., Mr. Esposito and Mr. Wyrsch parked in a designated handicap space. (Esposito Dep. at  103:19-104:2). Mr. Esposito does not recall how he went from the parking space to the hotel lobby, or whether he encountered any difficulty. (*Id.* at 111:17-112:1).  Indeed, Mr. Esposito's testimony contained many statements such as "I don't remember exactly how the hotel looked like," (*Id.* at 111:21-22), and "It's rough to remember 19 months ago.  I can't remember." (*Id.* at 120:19-22; *see also id.* at 115:12-17).

Mr. Esposito did not have any problem checking into the hotel. (Esposito Dep. at 115:18-20).  He stayed in Room 128, which is not one of the Hampton Inn's designate handicap accessible rooms. (Stillwagon Cert, ¶ 2).  The Hampton Inn has four rooms designated "handicap accessible." (*Id.*).

After arriving in his room, Mr. Esposito and Mr. Wyrsch proceeded to examine the room. (Esposito Dep. at 121:18-23). Mr. Esposito claims taht he personally encountered accessibility barriers in his hotel room.  These barriers include:

(1) A bathtub, instead of a roll-in shower, in the bathroom;
(2) No grab bars behind the toilet;
(3) No 36-inch clearance space on the sides of the beds;
(4) No lift to get into the bed;
(5) Storage hangers were too high;
(6) The bathtub controls were unreachable; and
(7) Not enough clearance spaces inside the bathroom.

(*Id.* at 123:8-23, 126:10-11, 129:24-130:14).  Mr. Wyrsch took measurements and photographs of the hotel room to document these

barriers.

In addition to the room, Mr. Esposito claims he had trouble utilizing the soda machine and ice machine. (Esposito Dep. at 136:19-137:1). In addition, Mr. Esposito claims that he could not reach the public telephone in the lobby, but he admits that he did not attempt to use the public phone. (*Id.* at 138:12-16). Finally, Mr. Esposito claims that the restroom in the lobby was inaccessible because it had no grab bars. However, he did not attempt to use them. (*Id.* at 138:22-139:2). Mr. Esposito does not recall any other difficulties he encountered while staying at the Hampton Inn.

Mr. Esposito did not specifically request a handicap accessible room and was therefore given a non-handicap accessible room by the Hampton Inn. Defendant claims that a handicap accessible room was available for him had he requested one. (Stillwagon Cert., ¶¶ 2-6). During his stay, Mr. Esposito made no complaint to the hotel about his room assignment, (*Id.*, ¶ 9), and did not report to the hotel about any problems or difficulties he encountered. (Esposito Dep. at 145:13-19).

After the commencement of this action, Plaintiffs' expert on ADA compliance, Access-Ability, Inc., examined the Hampton Inn on September 20, 2005. The expert report documented, in its view, ADA violations, remedial measures, and approximate cost. (Pl. Ex. B). The alleged ADA violations in Plaintiffs' expert report

6

include accessibility barriers that Mr. Esposito personally encountered, as well as barriers relevant to his disability that he did not encounter (e.g. the door at the rear of the property), and barriers not relevant to his disability(e.g. potential access barriers for visual or audible disabilities).  (*See* Pl. Ex. B). Defendant did not provide any experts on this issue.

Mr. Esposito testified that he is planning another trip to the Atlantic City region.  He stated that he would like to check into the Hampton Inn again to ensure improved accessibility. (Esposito Dep. at 163:23-164:18).  Mr. Esposito has returned to the Hampton Inn on June 11, 2006 for another visit.  (Esposito Aff., ¶¶ 5, 6).

Mr. Esposito claims that he is an individual with disabilities as defined by the ADA.  (Compl. ¶ 9).  In his answers to interrogatories, Mr. Esposito stated that he has a Neurological Conversion Reaction[3] resulting in wheelchair dependency for mobility and safety.  (Def. Ex. 3, Plaintiffs Answers to Interrogatories, No. 1).  Mr. Esposito testified that he cannot stand for long periods of time and he requires the assistance of a wheelchair.  (Esposito Dep., Def. Ex. 2 at 32:23-33:1).

---

[3] "The essential feature of Conversion Disorder is the presence of symptoms or deficits affecting voluntary motor or sensory function that suggest a neurological or other general medical condition." Diagnostic and Statistical Manual of Mental Disorder (DSM-IV), 4th ed. (p. 452).

According to Mr. Esposito, his condition is neuropsychological in nature. (Esposito Dep., Def. Ex. 2 at 33:5). He believes that his condition was related to a car accident that took place in 1971. (*Id.* at 33:10-20). In 1974, Mr. Esposito consulted with a neurology group in Fort Lauderdale, underwent extensive testing, and was directed to a psychiatrist. (*Id.* at 35:15-36:1).

Between 1974 and 1980, Mr. Esposito was treated by a social worker at a mental health clinic. (Esposito Dep., Def. Ex. 2 at 37:20-38:13). Approximately 3 years ago, Mr. Esposito's doctors at the Veterans Administration sent him to Miami for 3 days of testing. But Mr. Esposito testified that they could not find any problems with him. (*Id.* at 181:1-4).

According to Defendant, Mr. Esposito has not yet supplied any expert reports addressing his medical condition and he has not identified anyone in his answers to interrogatories who will testify at trial about his medical condition. (*See* Def. Ex. 3, Plaintiffs Answers to Interrogatory No. 13). Defendant also claims that Plaintiffs have not provided disclosures of treating medical personnel pursuant to Fed. R. Civ. P. 26, and reference to, or identify of, any medical records.[4]

---

[4]   According to the Court's Scheduling Order dated February 24, 2006, all factual pretrial discovery was to be concluded by April 28, 2006, and the depositions of all experts were to be concluded by April 30, 2006. (Docket No. 23).

On May 11, 2006, Plaintiffs supplied to Defendant a one-page letter dated October 21, 2003, from Dr. Thomas C. Hammond.  Dr. Hammond's letter offers the opinion that Mr. Esposito suffers from hysterical conversion reaction disorder.  Mr. Esposito objected to the production of any other medical records.

Plaintiffs move for summary judgment and request the Court to: (1) find Defendant liable for maintaining its property in violation of Title III; and (2) require parties to submit additional briefing with an estimation of time needed to make the necessary repairs on Defendant's property for compliance with the ADA.  Defendant moves for summary judgment, claiming that: (1) Plaintiffs have no standing to bring this Title III action against Defendant; and (2) Plaintiff Esposito has not established that he is a disabled person under the definition of the ADA. Defendant, however, does not dispute the existence of accessibility barriers in violation of the ADA.

## II.

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  (quoting

Fed. R. Civ. P. 56(c)).

In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (internal quotation and citation omitted; ellipsis in original).

"'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004).

### III.

### A.

Defendant first argues that Plaintiffs do not have standing to seek prospective injunctive relief under the ADA. Defendant

also argues that even if Plaintiffs have standing to commence the
action, they do not have standing with respect to barriers
contained in the expert report but not encountered by Mr.
Esposito, or barriers beyond Mr. Esposito's disability.
Plaintiffs argue that Mr. Esposito has individual standing, and
A4A has associational standing to challenge all accessibility
barriers at the Hampton Inn.

"[T]he question of standing is whether the litigant is
entitled to have the court decide the merits of the dispute or of
particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).
Section 2 of Article III of the United States Constitution limits
federal jurisdiction to "Cases" or "Controversies." *See Lujan v.*
*Defenders of Wildlife*, 504 U.S. 555, 559 (1992).  The doctrines
that have developed to elaborate the case or controversy
requirement are "founded in concern about the proper-and properly
limited-role of the courts in a democratic society." *Warth*, 422
U.S. at 498.

The requirement of a case or controversy places the burden
on Plaintiffs to allege that they have "such a personal stake in
the outcome of the controversy as to warrant invocation of
federal-court jurisdiction and to justify exercise of the court's
remedial powers on [their] behalf." *Paige v. Philadelphia*
*Housing Authority*, No. 99-497, 2002 WL 500677, at *4 (E.D. Pa.
2002) (citing *Warth*, 422 U.S. at 498-99).

11

The doctrine of standing consists of constitutional and prudential considerations.  *See Allen v. Wright*, 468 U.S. 737, 751 (1984).  The prudential component of standing embraces "judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances..., and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked."  *Id*. at 751.

Constitutional component of the standing requirement, on the other hand, is "derived directly from the Constitution."  *Allen*, 468 U.S. at 751.  At an "irreducible constitutional minimum," *Paige*, 2002 WL 500677, at *4, Plaintiffs must demonstrate that they have: (1) "suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000)(citing *Lujan*, 504 U.S. at 560-61).  *See Clark v. Burger King Corp.*, 255 F. Supp. 2d 334, 341 (D.N.J. 2003)(Irenas, J.); *Heir v. Delaware River Port Authority*, 218 F. Supp. 2d 627, 639 n.9 (D.N.J. 2002)(Irenas, J.); *see also The Pitt News v. Fisher*, 215 F.3d 354, 359 (3d Cir.

2000); *Doe v. National Bd. of Medical Examiners*, 199 F.3d 146, 152-53 (3d Cir. 1999).  The party invoking federal jurisdiction has the burden of satisfying these elements.  *Lujan*, 504 U.S. at 561.  Failure to make the necessary showing means the party they has no standing.  *Clark*, 255 F. Supp. 2d at 341.

Furthermore, because Plaintiffs seek prospective injunctive relief,[5] they must demonstrate a "real and immediate threat" of injury in order to satisfy the "injury in fact" requirement. *City of Los Angeles v. Lyons*, 461 U.S. 95, 103-04 (1983).  The Third Circuit has held that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief..." *Brown v. Fauver*, 819 F.2d 395, 400 (3d Cir. 1987).  In order to obtain standing for prospective relief, Plaintiffs must "establish a real and immediate threat that [they] would again be [exposed to the alleged violations of his lawful rights]." *Id.*  For example, in *Lujan*, the Court found that "'some day' intentions--without any description of concrete plans, or indeed even any speculation of when the some day will be--do not support a finding of the 'actual or imminent' injury..." 504 U.S. at 564.  In the context of Title III of the ADA, the Third Circuit has held that the principles of standing are equally applicable.  *Doe*, 199 F.3d at 153.

---

[5]  Under Title III of the ADA, only injunctive relief is available.  *See* 42 U.S.C. § 12188; *W.G. Nichols, Inc. v. D. Ferguson*, No. 01-834, 2002 WL 1335118 at *10 (E.D. Pa. 2002).

i.

Plaintiff Esposito claims that he has standing to seek prospective injunctive relief pursuant to Title III.  Thus, he must demonstrate that he meets both components of the standing requirement.

Defendant does not dispute the traceability and the redressability elements of the constitutional component of standing analysis.  His argument here focuses on whether Plaintiff Esposito's future injury is concrete and particularized.  *See Friends of the Earth, Inc.*, 528 U.S. at 180-81.  To determine whether a future injury is concrete and particularized for the purpose of a Title III claim, the Court must consider the likelihood of Mr. Esposito returning to the Hampton Inn, Defendant's place of public accommodation.  *See Access 4 All, Inc. v. 539 Absecon Blvd., LLC*, No. 05-5624, 2006 WL 1804578 at *3 (D.N.J. 2006).  An alleged intention to "someday" return to the place in question is insufficient.  *Id.*

Generally, courts examine four factors to determine a plaintiff's likelihood to return: "(1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiff's past patronage of the defendant's place of public accommodation; (3) the definitiveness of the plaintiff's plan to return; and (4) the plaintiff's frequency of travel near the defendant."  *539 Absecon Blvd., LLC*, 2006 WL 1804578 at *3.  For

14

example, the Court held in *Clark v. Burger King* that a plaintiff established a likelihood of future injury based on his previous visits to defendant's restaurants and his desire to return to those locations.  255 F. Supp. 2d at 343.  On the other hand, in *Access 4 All v. Oak Spring, Inc.*, the court found that a plaintiff only established a speculative injury where he alleged a general intent return to defendant's hotel and no continuing connection to the area where defendant's hotel was located.  2005 WL 1212663 at *5 (M.D. Fla. 2005).

When the place of public accommodation is a hotel, as opposed to a restaurant, Plaintiff's proximity is less probative of intent to return.  *See 539 Absecon Blvd., LLC*, 2006 WL 1804578 at *3.  This rule reflects the fact that hotels tend to serve people who do not live nearby.  For example, in *Access 4 All, Inc. v. Wintergreen Commercial Partnership, Ltd.*, the court found that plaintiff's proximity to defendant's hotel neither injured nor advanced his claim, and that this part of the analysis was irrelevant.  2005 WL 2989307 at *3 (N.D. Tex. 2005).  Similarly, in this case, Plaintiff Esposito's claim arises out of barriers he encountered at Defendant's hotel; thus, although Plaintiff resides in Florida, the considerable distance from the hotel does not foreclose his claim for lack of standing.  *See  539 Absecon Blvd., LLC*, 2006 WL 1804578 at *3.

Additionally, the Court must consider Plaintiff's past

15

patronage of Defendant's hotel.  According to the Complaint, Plaintiff Esposito spent one night in the Hampton Inn in 2004. He also claims that he returned to the Hampton Inn during June of 2006.  (Esposito Aff., ¶¶ 5, 6).  This fact is undisputed, and thus this element is satisfied.  *See Kratzer v. Gamma Management Group*, *Inc.*, 2005 WL 2644996 at *3 (E.D. Pa.2005) (finding that plaintiffs' visit and alleged intent to return to defendant's hotel stated a claim of an actual injury under the ADA).

Finally, factors 3 and 4 both address the same issue, the definitiveness of Plaintiff Esposito's plan to return.  Here, Plaintiff must show definitive plans to return to the Hampton Inn.  Mr. Esposito claims that he demonstrated his intent to return by revisiting the Hampton Inn in June of 2006.  In addition, Mr. Esposito claims that he loves gambling and the Atlantic City region.  (Esposito Aff. ¶¶ 3, 5).  He also claims that he particularly likes to gamble at the Borgata Hotel and Casino, which is close to the Hampton Inn.  (Id. at ¶ 5). Finally, Plaintiff Esposito claims that he intended to return to the Hampton Inn in order to conduct additional examination to ensure ADA compliance.  (Esposito Dep. at 163:23-164:18).

Defendant relies on the distance between Florida and Atlantic City to draw the inference that Plaintiff Esposito is unlikely to return to the Hampton Inn.  Defendant also claims that the motive for Mr. Esposito's returning to the Hampton Inn

16

was improper.  (Def. Reply Br. at pp. 14-17).  The Court rejects both arguments.

First, as the Court noted above, because Defendant's place of public accommodation in this case is a hotel, the distance between Mr. Esposito's residence and the hotel neither advances nor injuries his claim of intent to return.  In addition, the motive for a plaintiff to return to a particular place of public accommodation is not a factor typically considered by the Court. *See 539 Absecon Blvd., LLC*, 2006 WL 1804578 at *3 (enumerating the factors to consider for standing determination).  Indeed, because Plaintiff Esposito is a frequent litigant with the stated goal of ensuring ADA compliance, his claim of intent to return to the Hampton Inn to do additional examinations is made more, not less, credible.[6]  Furthermore, Mr. Esposito's mother lives in Long Island, New York, and Mr. Esposito claims that he enjoys gambling in Atlantic City.  Thus, it is likely that when Mr. Esposito visits his mother, he may take the opportunity to make trips to Atlantic City and stay in the Hampton Inn.  Thus, The Court finds that Mr. Esposito has met his burden of showing an intent to return to the Hampton Inn, and thus demonstrated a

---

[6]  The court in *539 Absecon Blvd.* noted that another court has held that hotel reservations made after the filing of the complaint may not be used to assert an intent to return.  2006 WL 1804578 at *4.  However, Mr. Esposito's June 2006 trip to the Hampton Inn is not the decisive factor in the Court's decision. Indeed, even without the June 2006 trip, the Court would still find sufficient intent to return to confer standing.

"concrete and particularized" injury.

In addition to satisfying the constitutional component, allowing Mr. Esposito standing to pursue his Title III claim does not implicate the prudential component of standing analysis.  Mr. Esposito is not attempting to raise another person's legal rights, and not asserting a generalized grievance.  His claim also falls within the zone of interests protected by the ADA.  *See Allen*, 468 U.S. at 751.

Thus, the Court holds that Mr. Esposito has standing to personally seeking prospective injunctive relief against Defendant.

ii.

Plaintiff A4A argues that it has associational standing to seek the requested prospective injunctive relief.  An organization may claim associational standing when: "(1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation in the lawsuit of each of the individual members."  *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977); *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 207 (D.N.J. 2003).  Associations bringing claims on behalf of its members are limited to relief that, "if

granted, will inure to the benefit of those members of the association actually injured." *Addiction Specialists, Inc. v. Township of Hampton*, 411 F.3d 399, 406 (3d Cir. 2005).

As the Court stated above, Mr. Esposito has personal standing to bring this claim. Thus, the first element of the *Hunt* test is satisfied.

Under the second element, the Court must consider whether the interests that A4A seeks to protect are germane to its organizational purpose. According to the Complaint, Plaintiff A4A is a not-for-profit Florida corporation whose members consist of individuals with disabilities, and A4A's stated purpose is to represent the interests of its members by ensuring that places of public accommodation are accessible to disabled persons. (Compl. ¶ 8). Because this case is germane to Plaintiff A4A's organizational purpose, the second element of *Hunt* test is satisfied.

Finally, the Court must consider whether the claim advanced by the association requires participation of each individual member. "It is almost a bright-line rule 'that requests by an association for declaratory and injunctive relief do not require participation by individual association members' ... but conversely 'damages claims usually require significant individual participation, which fatally undercuts a request for associational standing.'" *Clark*, 213 F.R.D. at 207 (citing

19

*Pennsylvania Psychiatric Society v. Green Spring Health Services, Inc.*, 280 F.3d 278, 284 (3d Cir. 2002).  In this case, Plaintiffs only seek declaratory judgment and prospective injunctive relief, not damage awards.[7]  Individualized assessments of Plaintiff A4A's members and their participation in this case is unnecessary.

The Court holds that Plaintiff A4A has met its burden to establish associational standing.

### iii.

Plaintiffs claim that they have standing to challenge the accessibility barriers not encountered by Mr. Esposito, and barriers beyond his disability (e.g. barriers to the blind or the hearing impaired).  Defendant disputes Plaintiffs' standing on both types of barriers.

The Eighth Circuit has considered both of these questions in *Steger v. Franco, Inc.*, 228 F.3d 889 (8th Cir. 2000).  Courts within the Third Circuit have cited this case with approval.  *See 539 Absecon Blvd.*, 2006 WL 1804578; *Kratzer v. Gamma Mgmt. Group, Inc.*, 2005 WL 2644996 (E.D. Pa. 2005); *Clark v. Burger King Corp.*, 255 F. Supp. 2d 334; *Clark v. McDonald's Corp.*, 213 F.R.D.

---

[7]  Plaintiffs also seek attorneys' fees.  However, attorneys fees do not require individualized assessment of A4A's members. Therefore, it does not injury A4A's claim to associational standing.

198 (D.N.J. 2003); *W.G. Nichols, Inc. v. Ferguson*, 2003 WL
22158794 (E.D. Pa. 2002).

In *Steger*, a blind plaintiff sued an office building under
Title III for its failure to install raised lettering, braille,
or other signage that would identify the men's restroom to a
blind person.  228 F.3d at 892.  In addition to the restroom,
which was the only accessibility barrier he encountered, the
plaintiff also sought prospective injunctive relief for the
removal of all accessibility barriers, regardless of his
encounter with them or their relations to blindness.

The Eighth Circuit held that the plaintiff need not
encounter all of the barriers in order to challenge them.  The
effect of such a rule, argued the Eighth Circuit, "would be
piecemeal compliance."  *Steger*, 228 F.3d at 894.  Under such a
rule, "numerous blind plaintiffs, each injured by a different
barrier, would have to seek injunctive relief as to the
particular barrier encountered until all barriers had been
removed.  This not only would be inefficient, but impractical."
*Id.*; *see also Independent Living Resources v. Oregon Arena Corp.*,
982 F. Supp. 698, 762 (D. Or.1997).

On the other hand, the Eighth Circuit rejected the
plaintiff's argument that he has standing to seek relief for ADA
violations unrelated to his disability.  *Steger*, 228 F.3d at 893.
"To meet the injury-in-fact requirement, 'the party seeking

review [must] be himself among the injured.'" *Id.* (quoting *Lujan*, 504 U.S. at 560).  A disabled person is not among the injured when the alleged ADA violations do not affect him.  Indeed, "granting [such a plaintiff] standing to seek relief on behalf of all disabled individuals would expand the standing doctrine beyond the limits of Article III."  *Id.*; *see also Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996).

The Court agrees with the reasoning and analysis of the Eighth Circuit.  Therefore, Plaintiffs have standing with respect to all alleged accessibility barriers related to Mr. Esposito's disability (wheelchair confinement) but no standing with respect to barriers unrelated to his disability.

## B.

Title III of the ADA protects individuals from discrimination on the basis of disability "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a). Discrimination against disabled individuals includes "failure to remove architectural barriers ... in existing facilities, ... where such removal is readily achievable."  42 U.S.C. § 12182(b)(2)(A)(iv).  Title III gives a private right of action

22

"to any person who is being subjected to discrimination on the basis of disability..." 42 U.S.C. § 12188(a)(1).  In cases of violation of § 12182(b)(2)(A)(iv), a court may order injunctive relief which shall include an order to make the facility compliant to the extend required by Title III.  42 U.S.C. § 12188(a)(2).

Defendant does not dispute that the Hampton Inn is a place of public accommodation, that Defendant owns or operates the Hampton Inn, or that the Hampton Inn failed to comply with Title III.  However, Defendant disputes that Plaintiff Esposito is a disabled individual under the ADA.

In order to state a cognizable cause of action under the ADA, a plaintiff must establish that he is a "qualified individual with a disability."  *See* 42 U.S.C. § 12112(a); *Cleveland v. Policy Management Sys. Corp.*, 526 U.S. 795, 806 (1999).  The term "disability" is defined in 42 U.S.C. § 12102(2)(A), as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual..."  The Supreme Court has recognized the term "major life activities" to include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  *Bragdon v. Abbott*, 524 U.S. 624, 638-39 (1998)(quoting 45 C.F.R. § 84.3(j)(2)(ii)).

Mr. Esposito is currently wheelchair bound.  According to

23

his discovery materials, he has an Neurological Conversion Reaction resulting in wheelchair dependency for mobility and safety. (Def. Ex. 3, Plaintiffs Answers to Interrogatories, No. 1). Mr. Esposito also testified that he cannot stand for long periods of time, has a limited ability to walk, and has required the use of a wheelchair since 1981. (Esposito Dep. at 32:23-33:1).

In *Marinelli v. City of Erie, Pa.*, the Third Circuit noted that "[t]here is certainly no general rule that medical testimony is always necessary to establish disability." 216 F.3d 354, 360 (3d Cir. 2000)(citing *Katz v. City Metal Co.*, 87 F.3d 26 (1st Cir.1996)). Indeed, [s]ome long-term impairments would be obvious to a jury (e.g., a missing arm) and it is certainly within the realm of possibility that a plaintiff himself in a disabilities case might offer a description of treatment and symptoms over a substantial period that would [allow] the jury [to] determine that [the plaintiff] did suffer from a disability." *Id.*

The necessity of medical testimony, in any given case, turns on the extent to which the alleged impairment is within the comprehension of a jury that does not possess a command of medical or otherwise scientific knowledge. *Marinelli*, 216 F.3d at 360. Under this rule, the Third Circuit held that the plaintiff in *Marinelli*, who was suffering from arm and neck pain,

24

did not need medical testimony to establish his disability because such symptoms are "among those ailments that are the least technical in nature and are the most amenable to comprehension by a lay jury."  *Id.*

In the current state of the record, it is clear that Defendant is not entitled to summary judgment.  Mr. Esposito's deposition testimony and Dr. Hammond's letter created, at the minimum, a factual dispute with respect to Mr. Esposito's disability.  Thus, Defendant's Motion and Cross Motion for Summary Judgment will be denied.

Plaintiffs submitted an expert report in support of their summary judgment motion.  (Pl. Ex. B).  This report contains various ADA violations existing at the Hampton Inn, including barriers that Plaintiffs have no standing to challenge because they are unrelated to Mr. Esposito's disability (e.g. barriers to the blind).  For this reason, Plaintiffs' Motion for Summary Judgment will be denied pending the resolution of (i) the issues related to which barriers Plaintiffs have standing to challenge; (ii) the unresolved discovery issues; and (iii) a determination of whether Defendant should have an opportunity to file its own expert report.

Defendant complained of discovery problems with respect to Plaintiff Esposito's physical conditions, and moved to strike the expert report related to alleged ADA violations for late filing.

Plaintiffs also filed discovery motions (Docket No. 41, 49), which have not yet been decided.  The Court will schedule a conference with the parties to resolve these disputes.

## V.

For reasons set forth above, the Court will deny Plaintiffs' Motion for Summary Judgment and Defendant's Motion and Cross Motion for Summary Judgment.  The Court will issue an appropriate order.


Date: October 30, 2006


/s *Joseph E. Irenas*
_____
**JOSEPH E. IRENAS**
Senior United States District Judge